# AUSTRALIAN GOLD AND SWEDISH BEAUTY
## DISTRIBUTORSHIP AGREEMENT
### NON-EXCLUSIVE – DOMESTIC – MULTI-YEAR

THIS AGREEMENT ("Agreement") is made and entered into this _____ day of _____, 2006, and effective as of the 1st day of November, 2006, by and among Australian Gold, LLC, an Indiana corporation, ("Australian Gold") and _____, a partnership/corporation/LLC

[Insert name of Distributor]

organized under the laws of the State of ___North Carolina___ [circle one]

[Insert state of organization/incorporation]

("Company") and ___Rodney "Chip" Strond + Cathy Teague Strond___

[Insert name of Owners]

an individual/partnership/corporation/LLC residing or organized under the laws of the State of ___North Carolina___, ("Owners", collectively with Company, "Distributor").

[circle one]

[Insert state of residency
or organization/incorporation]

## AGREEMENT

In consideration of the mutual promises, covenants and conditions, the sufficiency of which are hereby acknowledged, the parties agree as follows:

## ARTICLE I.
## DISTRIBUTION RIGHTS AND OBLIGATIONS

1.1.   MARKETING, DISTRIBUTION AND SALE OF PRODUCTS.

(A)   Right to Market, Distribute and Sell Products. Distributor is granted the non-exclusive right to market, distribute and sell Products only in accordance with this Agreement. Any rights previously granted or existing are rescinded and void. Australian Gold retains the right to market, distribute and sell Products or to grant rights to any other person or entity to market, distribute and sell Products. Australian Gold retains the sole and exclusive right to market Products to franchised salons of the Planet Beach Franchising Corporation, and Distributor may not actively market Products to such salons without the prior written consent of Australian Gold (which consent may be withheld by Australian Gold in its sole discretion).

(B)   Products Defined. "Products" as used in this Agreement means tanning products, skin care products and hair and beauty care products sold by Australian Gold as of the date of this Agreement or at any time in which this Agreement is in effect under any of the Intellectual Property (as defined in Section 2.1). A list of the Products is attached as Exhibit A to this Agreement, which list may be amended from time to time in the sole discretion of Australian Gold. The terms of Exhibit A have not been finalized at the time of execution of this Agreement; however,

EXHIBIT

A

the parties agree that they will make every reasonable effort to finalize the terms of <u>Exhibit A</u> as soon as possible.

(C)     <u>Geographic Territory</u>. Distributor may market, distribute and sell Products only in the United States and shall not, directly or indirectly, market, distribute or sell any Products outside of the United States, except as expressly allowed by this Agreement or with the prior written consent of Australian Gold (which consent may be withheld by Australian Gold in its sole discretion). This Agreement neither contemplates nor requires Distributor to maintain a fixed location for the display and sale of Products in the States of Arkansas, Connecticut or New Jersey. Australian Gold will neither comment upon nor advise Distributor as to the proper physical location for the display or sale of Products.

(D)     <u>Customers of Distributor</u>. Distributor shall market, distribute or sell Products only to Customers. Australian Gold shall have the sole right to determine whether a sale is made in accordance with this provision, including the sole right to determine if a person is properly characterized as a "Customer."

      (i)     For all purposes in this Agreement, "Customer" means only a person (a) whose primary business activity is operating a tanning salon or hair and beauty care salon; and (b) who offers approved indoor tanning and instruction on the use of Products as an on-premises service; and (c) who obtains training and instruction on matters related to the use of the Products from Australian Gold or one of Australian Gold's distributors.

      (ii)     In no circumstance shall "Customer" refer to or mean (a) the end user of Products, (b) any buying group, association or cooperative that collectively purchases Products, or (c) any person including any tanning salon who sells to other resellers or buys on behalf of other resellers, or (d) any individual or entity, including any tanning salon, who sells the Products on the internet in any manner whatsoever including but not limited to e-Bay, Froogle, Yahoo or any other domain name or website which offers the Products for sale. Distributor shall not market, distribute or sell Products to any other individual, business or entity, including any drug stores, grocery stores or other retail, wholesale or discount stores or outlets, flea markets, shopping malls, etc.

      (iii)     Distributor shall provide Australian Gold with all information regarding Distributor's Customers which Australian Gold may request, including purchase orders, invoices, Customer lists, Subdistributor lists, and contracts, any time Australian Gold requests such information. Distributor shall provide requested Customer information in writing within seven (7) days of receipt of Australian Gold's request. In addition, Australian Gold shall have the right to inspect the books and records of Distributor as set forth in <u>Section 5.3</u> below. Distributor acknowledges Australian Gold's proprietary interest in the identity of the Customers, as well as the amount and nature of the Products they purchase, and agrees to maintain such

AG/CG/SB Distrib Agmt – Domestic – Non-Exclusive – Multi Year (2006-2009)
1/1698188.5

information in strictest confidence for the benefit of Australian Gold, and hereby agrees not to disclose any of such information to any third party without the prior written consent of Australian Gold, which consent may be withheld by Australian Gold in its sole discretion.

(iv)     Distributor shall immediately notify Australian Gold if the sales volume of any Customer or any Customer of Subdistributor increases by $10,000.00 or more from the prior year or if any Customer places an order for more than $10,000.00, unless such Customer has been previously identified to Australian Gold and such Customer routinely places orders in excess of $10,000.00.

(v)      Distributor acknowledges Australian Gold's interest in protecting the channel of distribution of the Products and acknowledges that Australian Gold may, from time to time, direct Distributor not to sell Products to certain individuals or entities.

(E)    Internet Policy.  Distributor shall not use the internet to market, distribute or sell the Products in any way, except as expressly allowed by this provision of the Agreement.

(i)     Use of Internet to Market Products.

(a)     Distributor.   Except as provided in Section 1.1(E)(ii) below, Distributor may use the internet solely to describe the Products and their use.  Because Australian Gold considers that the advertising of prices directly or indirectly constitutes an offer to sell, Distributor shall not use the internet in any form to advertise prices, discounts, rebates or similar information with respect to Products, including an invitation or solicitation to contact (by any means) for pricing, discounts, or rebates of Products.  Distributor shall not directly or indirectly distribute or sell Products to any person or entity which markets, distributes or sells Products on the internet or to any individual or entity that purchases Products on behalf of another for sale on the internet, as described in this Internet Policy.  Distributor's website shall not contain any link which sells Products to any person or entity which markets, distributes or sells Products to an end user.  Australian Gold reserves the right to require Distributor to remove any link which Australian Gold (in their sole discretion) determines violates the distribution, marketing or internet policies as described in this Agreement;

(b)     Distributor's Customers.   Distributor assumes the duty to implement and enforce this Internet Policy with regard to each Customer.  In this regard, Distributor shall authorize a Customer to use the internet relating to the Products, only pursuant to a written

- 3 -

agreement, previously approved by Australian Gold, which conforms to the provisions of this Section 1.1(E) and only if: (a) the Customer strictly adheres to this Internet Policy as described herein; (b) the Distributor monitors and audits the practices of the Customer to ensure strict compliance with this Internet Policy; and (c) in such written agreement Distributor reserves the right, upon any violation of this Internet Policy as determined by Australian Gold, Distributor or otherwise, to cease immediately all distribution and sales of Products to the Customer.

(ii)   Use of Internet to Sell Products. Distributor may use the internet to sell Products to Customers only if:

(a)   the sale of the Products otherwise complies with this Agreement, including the restrictions and limitations contained in Section 1.1(C) and Section 1.1(D);

(b)   Distributor implements password protected software, which has been approved by Australian Gold, that denies anyone who is not a Customer the ability to purchase the Products or to view pricing information using the internet;

(c)   Distributor implements procedures acceptable to Australian Gold to verify that those entities given a password to access and purchase the Products are Customers as defined in Section 1.1(D) and that no person who is not a Customer is able to gain access to the Distributor's website in order to purchase Products; and

(d)   Customers of Distributor do not use the internet to sell Products, however, such Customers may use the internet to provide a description of Products and their use if provisions in Section 1.1(E)(i)(b) are satisfied.

Distributor agrees to restrict access to anyone Australian Gold determines not to be a Customer. Distributor shall not use the internet to sell Products to individuals for their personal consumption.  Specifically, Section 1.1(H)(ii), which is an exception to Section 1.1(D), shall not apply as an exception to this Internet Policy. All restrictions and limitations set forth in Section 1.1(E)(i) shall apply to any portion of Distributor's website that is not password protected.

If Distributor complies with the restrictions set forth in this Section 1.1(E)(ii), then the portion of Distributor's website accessible only by Customers may include prices, discounts, rebates and similar information with respect to Products.

(F)   Amendment and Violation of Internet Policy. Australian Gold reserves the right to amend or modify the Internet Policy at any time in its sole discretion by

- 4 -

providing a revised Internet Policy or any specific change to the Internet Policy to Distributor, and any such amendment shall be incorporated by reference into this Agreement automatically and without any further action by the parties. Distributor shall immediately comply with such changes. If Distributor knows of, or has reason to believe, that any of its Customers are violating this Internet Policy in any way, Distributor shall immediately cease all distribution and sales of Products to that Customer. Distributor shall have an affirmative obligation to provide to Australian Gold, the name and location of any person or entity known or suspected by the Distributor to be distributing or selling Products over the internet, and provide to Australian Gold all information requested by Australian Gold regarding sales of any Products by Distributor to such Customers. If Distributor breaches this provision, Australian Gold shall have the right to exercise all available remedies under this Agreement.

(G)    <u>Reacquisition by Distributor.</u>  Distributor acknowledges and agrees that, in addition to the remedies provided by <u>Section 3.1</u>, <u>Section 3.2</u>, <u>Section 3.3</u>, and <u>Section 5.5</u> below, if Distributor fails to comply with this <u>Section 1.1</u>, Australian Gold shall have the right to require Distributor to reacquire, at Distributor's own expense, any Products which Distributor sold in violation of this <u>Section 1.1</u>. If Distributor fails or refuses to reacquire any Products which Distributor sold in violation of this <u>Section 1.1</u>, Distributor will have breached this Agreement and Australian Gold shall have the right to exercise all available remedies under <u>Section 3.1</u>, <u>Section 3.2</u>, <u>Section 3.3</u> and <u>Section 5.5</u> below.

(H)    <u>Exceptions to Section 1.1(D)</u>.

   (i)    Distributor shall sell Products to another person for resale in accordance with the terms of this Agreement (a "Subdistributor") only with the prior written consent of Australian Gold for each Subdistributor (which may be withheld by Australian Gold in its sole discretion); <u>provided</u>, <u>however</u>, that Distributor shall be responsible for any actions of such Subdistributor with respect to Products. For example, Distributor shall be in breach of this Agreement for any act committed by such Subdistributor if such act would constitute a breach of this Agreement if the act were committed by Distributor. Australian Gold also shall have the right to determine whether a customer of a Subdistributor is properly characterized as a "Customer" as defined in this Agreement. For all purposes in this Agreement, Customers of a Subdistributor constitute Customers of Distributor.

   (ii)   Distributor may sell Products directly to a person who is not a Customer if (a) the person is an individual, and (b) the sale is made in conjunction with the sale of tanning equipment to the same individual, and (c) the sale of Products is limited in quantity and type to Products that can reasonably be expected to be consumed by the individual to whom the Products are sold.

(iii) Australian Gold shall have the sole right to determine if a sale falls within one of the exceptions as set forth in Section 1.1(H)(i) or Section 1.1(H)(ii) above. Any sale which, in Australian Gold's sole discretion, does not satisfy either of the limited exceptions set forth in this Section 1.1(H) shall constitute a sale in violation of Section 1.1(D) above.

1.2. TERM. The term of this Agreement shall commence on the first date stated above and shall terminate at 11:59 p.m. (Eastern Standard Time) on October 31, 2009. Section 1.1, Section 2.3, Section 3.1, Section 3.3, Section 4.3, Section 5.4, Section 5.5, Section 5.6, Section 5.7, Section 5.8, Section 5.10, Section 5.15, and Section 5.16 shall survive any termination or expiration of this Agreement. Nothing in this Agreement shall be interpreted or construed as imposing upon Australian Gold any obligation to extend the term of this Agreement beyond October 31, 2009 or to enter into a new or renewed agreement with Distributor on or after such date. Distributor is therefore on notice that the relationship created by this Agreement, unless terminated earlier under Section 3.1 or by agreement of the parties, shall end on October 31, 2009 unless prior to that date the parties enter into a new agreement.

1.3. PURCHASE PRICE OF PRODUCTS. Distributor's purchase price of Products shall be equal to the prices set forth on the Distributor Price List attached hereto as Exhibit A based upon the sales performance of Distributor (as defined in the Distributor Price List) during the previous year. If Distributor was not a distributor of Products during the previous year, then the parties may substitute an agreed upon estimate of Distributor Sales Performance for the historic sales performance required by the preceding sentence.

1.4. SHIPMENT AND DELIVERY; PAYMENT TERMS. All Products shall be sold F.O.B. Australian Gold's facility, Indianapolis, Indiana. Australian Gold may change the shipping point at its sole discretion. Payment for all Products shall become due and payable when delivered by Australian Gold for shipment and shall be paid in full prior to shipment, unless otherwise agreed in writing by Australian Gold in Australian Gold's sole discretion. All risk of loss shall pass to Distributor when the Products are made available to Distributor, or the carrier, as the case may be, at the shipping point.

1.5. LABELS. All labels of Products shipped by Australian Gold to Distributor under this Agreement shall be in the English language. Distributor shall not amend, alter or replace any Product labels. If Distributor is aware or receives notice from its Subdistributor that any Product label is not in compliance with any law, Distributor shall inform Australian Gold of such fact, in writing, indicating the law, label and nature of noncompliance. If other labeling is required, such other labeling shall be used only with Australian Gold's written consent and at Distributor's expense.

1.6. PRODUCT TRAINING. Distributor shall use its best efforts to assist Australian Gold in educating Distributor's sales staff and Customers with regard to the use and benefits of the Products. Distributor shall not be required to pay Australian Gold a fee or reimburse Australian Gold for its costs to provide training or to purchase any training materials, including manuals, from Australian Gold in connection with this provision (although Australian Gold may request that Distributor pay the costs of any additional training

AG/CG/SB Distrib Agmt – Domestic – Non-Exclusive – Multi Year (2006-2009)
I/1698188.5

materials which Distributor may request.)    Without limiting the generality of the foregoing, Distributor shall do the following:

(A)     Distributor agrees to make each member of its sales force available on at least a quarterly basis, at Distributor's office or at another location reasonably acceptable to Australian Gold, during regular business hours to attend training programs on the use and benefits of the Products, which programs shall be presented by Australian Gold's staff.  Distributor shall make it a requirement for continued employment (or, if such sales representatives are independent contractors, a requirement for maintenance of such status) of each sales representative that they attend one such program within six months of joining Distributor's sales force and at least two such programs during each year thereafter.

(B)     Distributor shall host, at its office or another location reasonably acceptable to Australian Gold, at least two programs during each year, which programs shall address training on the use and benefits of the Products and other related topics acceptable to Australian Gold and to which programs Distributor shall invite its current and prospective Customers.  Distributor shall cooperate with Australian Gold on the presentation of such programs and shall use its best efforts to promote such programs to its Customers to ensure good attendance.  Distributor shall participate in future training programs introduced by Australian Gold that shall aid in gaining additional new business.  To that end, Distributor shall provide to Australian Gold no later than January 31 of each year a list of at least ten (10) Customers that currently carry five (5) SKUs or less of Products; provided, however, that such list shall not repeat any Customers named in similar lists delivered by Distributor to Australian Gold pursuant to a predecessor agreement.

(C)     Without limiting the obligations set forth in Section 1.6(B) above, Distributor also shall offer (at its own expense) training sessions to its Customers which are focused on educating Customers on the use and advantages of the Products and related topics reasonably acceptable to Australian Gold.

(D)     If Distributor sells Products to a Customer who has not purchased any Products within the last twelve (12) months ("New Customer"), Distributor shall notify Australian Gold immediately of such sale and such New Customer's contact information and business address.  Distributor acknowledges that Australian Gold may, at its option, provide training programs on the use and benefits of the Products directly to New Customer.   Distributor agrees to cooperate with Australian Gold in the provision of such training programs to New Customer in any and all ways in which Australian Gold may request and to make all efforts to ensure the agreement by the New Customer to permit Australian Gold to conduct such training and to ensure that all appropriate employees of New Customer participate in such training.

1.7.    RESALE PRICING POLICIES.   From time to time, Australian Gold, in its sole discretion, may announce suggested prices that may be charged for Products by Distributor to its Customers as described in the suggested pricing policy attached hereto

as <u>Exhibit B</u>. Australian Gold shall have the right to amend this exhibit at any time in its sole discretion by sending a revised exhibit to Distributor. Australian Gold does not request and shall not accept Distributor's agreement to comply with any such suggested price, and nothing herein shall be deemed to constitute Distributor's agreement with Australian Gold as to the resale price for Products that Distributor may charge.

1.8.   <u>ADVERTISEMENT REBATE POLICIES</u>. From time to time, Australian Gold, in its sole discretion, may announce an advertisement rebate policy whereby Australian Gold shall reimburse Distributor for advertising costs as described in <u>Exhibit C</u> attached hereto. Australian Gold shall have the right to amend this exhibit at any time in its sole discretion by sending a revised exhibit to Distributor.

1.9.   <u>NON-COMPETITION</u>.

(A)   During the term of this Agreement (as defined by <u>Section 1.2</u> above), Distributor agrees that it shall not, directly or indirectly, manufacture, market, sell or distribute any Affiliated Products (as defined in <u>Section 1.9(B)</u> below).

(B)   For purposes of this Agreement, the term "Affiliated Products" shall mean products which are (a) similar to, substitutes for, or in competition with the Products, and (b) produced or manufactured by or on behalf of Distributor or any affiliate of Distributor. An "affiliate" of Distributor shall include any person (whether an individual or an entity) which controls, is controlled by or under common control with Distributor. Without limiting the generality of the foregoing, control shall be deemed to exist between Distributor and another entity where (a) Distributor owns at least twenty-five percent (25%) of the voting shares of the other entity, the other entity owns at lease twenty-five percent (25%) of Distributor, or an individual or entity, or a group of individuals and/or entities own at least twenty-five percent (25%) of the voting shares of Distributor and of the other entity, or (b) Distributor is party to a joint venture, strategic alliance or similar arrangement with another entity if the effect of such venture, alliance or arrangement is to restrict Distributor's rights to sell, market or distribute Products to a geographic area, market or customer.

(C)

(i)   The purchase and resale by Distributor of products shall not violate this provision so long as (a) the products were manufactured by a person who is not an affiliate of Distributor, (b) Distributor purchased such products from a person who is not the Distributor or an affiliate of Distributor, (c) such products were purchased by Distributor on a non-exclusive basis, and (d) such products are also generally available in the market from distributors other than Distributor.

(ii)   In addition, the continued purchase and resale by Distributor of "private label" tanning lotions shall not violate this provision so long as it (a) is a continuation of a practice commenced prior to the date of this Agreement, (b) Australian Gold had knowledge of such practice and (c) the amount of

- 8 -

"private label" tanning lotions sold by the Distributor does not represent a material portion of the Distributor's gross revenues.

(D)   Distributor acknowledges that any actual or threatened breach of any of the covenants or obligations contained in this Section 1.9 may result in a material and irreparable injury to Australian Gold for which there is no adequate remedy at law, and that injury and damages to Australian Gold resulting from an actual or threatened breach will be immeasurable. Without limiting the rights or remedies, both legal and equitable, available to Australian Gold in the event of an actual or threatened breach by Distributor Australian Gold shall be entitled to seek and obtain a temporary restraining order and/or a preliminary or permanent injunction against Distributor which shall prevent Distributor from engaging in any activities prohibited by this Section 1.9 or to seek and obtain such other relief against Distributor as may be required to specifically enforce any of the covenants or obligations contained in this Section 1.9. Distributor further agrees to waive any requirement for the securing or posting of any bond by Australian Gold in connection with such remedies.

### ARTICLE II.
### USE OF INTELLECTUAL PROPERTY

2.1.   DISTRIBUTOR'S RIGHTS AND OBLIGATIONS. Subject to the terms and conditions hereof, Australian Gold hereby grants to Distributor, and Distributor accepts, a non-exclusive, limited, revocable, non-transferable license to use the trademarks ("Marks") and copyrights ("Copyrights") under which the Products are sold ("Intellectual Property") in connection with the promotion, marketing and sale of the Products within the United States subject to the terms and conditions of this Agreement. Nothing in this Agreement gives Distributor any right, title or interest in the Intellectual Property other than the right to use said Intellectual Property in accordance with the terms and conditions of this Agreement. All use of the Marks shall inure to the benefit of Australian Gold and/or its affiliates.

2.2.   MARKETING. Distributor shall use its best efforts to promote, market and sell the Products and service its accounts within the United States in a professional manner which does not detract or reduce the value of such Intellectual Property. Distributor shall be strictly prohibited from using or reproducing the Intellectual Property or Products or reference to the Intellectual Property or Products in any promotional material of any kind and on any media, including Distributor's internet web site without the express prior consent of Australian Gold. Distributor shall not use any Intellectual Property as part of any corporate or trade name or with any prefix, suffix or other modifying words, designs, or symbols, or in any modified forms, nor shall Distributor use any Intellectual Property in connection with the sale of any unauthorized product or service. Distributor is neither permitted nor required by the provisions of this Agreement to advertise itself as an "authorized distributor" of Australian Gold or the Products. If it becomes advisable at any time, in Australian Gold's sole discretion, for Australian Gold and/or Distributor to modify or discontinue use of any Intellectual Property, Distributor agrees to so modify or discontinue use of such Intellectual Property upon receipt of written notice from

- 9 -

Australian Gold. Further, upon termination or expiration of this Agreement, Distributor shall immediately cease and desist in use of the Intellectual Property, and shall destroy any remaining materials in its possession using the Intellectual Property. Distributor shall notify Australian Gold immediately of any third party's apparent infringement of, challenge to, or claim of rights in any Intellectual Property. Distributor shall not file any application for Intellectual Property, in whole or in part (whether as a trademark, copyright, domain name, or otherwise) at any time. Distributor acknowledges and agrees that Australian Gold shall have sole discretion to take such action as it deems appropriate and the right to exclusively control any litigation, U.S. Patent and Trademark Office proceeding, other dispute resolution or other administrative proceeding arising out of any such infringement, challenge, or claim or otherwise relating to the Intellectual Property. Distributor agrees to execute any and all instruments and documents as shall, in Australian Gold's opinion, be necessary or advisable to protect and maintain the interests of Australian Gold in the Intellectual Property. Distributor will not challenge the validity of any of the rights of Australian Gold in the Intellectual Property. Distributor shall not file any application for Intellectual Property, in whole or in part (whether as a trademark, copyright, domain name, or otherwise) at any time.

2.3.   QUALITY CONTROL.  Distributor acknowledges the high quality of the goods and services associated with the Marks and the goodwill associated therewith are essential elements of this Agreement. Distributor shall cooperate with Australian Gold to assure that the nature and quality of the Distributor's use of the Marks and the quality of the goods and services provided by Distributor are consistent with the goodwill associated with the Marks. To that end, (a) Distributor shall provide samples of its use of the Mark upon Australian Gold's request; and (b) Distributor acknowledges and agrees that at all times during the term of this Agreement, Australian Gold shall have the right and authority to monitor and take such action as they deem necessary to ensure Distributor's compliance with this Article II.

2.4.   LICENSED PROPERTY NOTICE.  For Marks that are not registered with the U.S. Patent and Trademark Office, Distributor shall place the ™ symbol at the upper right-hand corner of such marks. For Marks that are registered with the U.S. Patent and Trademark Office, Distributor shall place the ® at the upper right-hand corner of such marks. Distributor shall use its best efforts to ensure that the Marks are (a) distinguished and distinctive from surrounding text; (b) not modified in any manner without the prior written consent of Australian Gold; (c) used alone without any other terms or designs which may detract from the Marks; and (d) reproduced according to specifications which may be provided from time to time by Australian Gold. In addition, Distributor shall display the copyright notice "© [insert appropriate year]," with the appropriate year inserted in connection with the Copyrights.

### ARTICLE III.
### TERMINATION, SUSPENSION AND AUSTRALIAN GOLD'S REMEDIES

3.1.   TERMINATION PROVISIONS.  Australian Gold may terminate this Agreement at any time after the occurrence of any of the following events by giving Distributor written notice of termination:

- 10 -

(A)     Upon Distributor's insolvency, bankruptcy or similar proceeding by or against Distributor; upon assignment or attempted assignment by Distributor for the benefit of creditors; any lien or levy against, or foreclosure or seizure of, any of Distributor's assets, including inventory, by a creditor, lienholder, lessor or government authority; or any appointment or application for appointment of a receiver for Distributor;

(B)     Distributor's failure to pay Australian Gold any sums due pursuant to the terms of this Agreement within ten (10) days following the date on which such sum is due and payable;

(C)     Distributor's engaging in any practice with respect to the Products, which is determined to be an illegal or unfair trade practice in violation of any applicable federal, state or local law, or which in the opinion of counsel to Australian Gold is an illegal or unfair trade practice in violation of any applicable federal, state or local law;

(D)     Distributor's and/or Subdistributor's failure to comply with any suggested price for Products that is announced at any time by Australian Gold or to comply with the Suggested Pricing Policy attached hereto as Exhibit B (including any suggestions set forth therein) or to comply with the Advertisement Rebate Policy attached hereto as Exhibit C;

(E)     Any breach or threatened breach of this Agreement by Distributor;

(F)     Any violation of Australian Gold's Internet Policy;

(G)     Any action or practice by Distributor that, in the sole discretion of Australian Gold, causes or threatens any injury to Australian Gold, any of its product lines or any of the Intellectual Property;

(H)     Distributor's sale of Products to any Subdistributor which has not been approved in writing by Australian Gold;

(I)     Distributor's sale of Products to any individual or entity to which Australian Gold has directed Distributor not to sell;

(J)     Distributor's breach or threatened breach of any other contract or agreement between Distributor and Australian Gold;

(K)     Upon receipt of the notice contemplated in Section 5.17 or upon Australian Gold's discovery of a change of control as described in Section 5.17;

(L)     Distributor's refusal to accept service of process;

(M)     Distributor's failure to comply with laws as described in Section 5.18 herein;

AG/CG/SB Distrib Agmt – Domestic – Non-Exclusive – Multi Year (2006-2009)
I/1698188.5

(N)     Upon the conviction of Distributor, or any officer, director, substantial owner or principal of Distributor, in a court of competent jurisdiction of (or plea of nolo contendere by any such person to) any offense substantially related to the business conducted by Distributor in connection with this Agreement or of any offense punishable by a term of imprisonment;

(O)     Distributor's falsification, failure to retain reasonable business records, or failure to provide complete records or reports requested by Australian Gold;

(P)     The sale, distribution or any other disposition of substantially all of Distributor's assets;

(Q)     A change in Distributor's active management occurs, which change, in the opinion of Australian Gold, will have a material effect on Distributor's ability to distribute and promote the Products. Such a change includes, but is not limited to, the death or incapacity for a period of thirty (30) days of a principal officer, partner or manager of Distributor; or

(R)     Distributor's unethical, immoral or unsavory conduct or any conduct or action deemed by Australian Gold to be inconsistent with the nature and spirit of this Agreement.

Distributor shall immediately notify Australian Gold if it is aware of any condition that could possibly be construed as any one of the occurrences listed in <u>Section 3.1(A)-3.1(R)</u> or any other condition that might impair Distributor's ability to comply with any of the terms of this Agreement. Distributor agrees that the provisions of this <u>Section 3.1</u> are essential, fair and reasonable and that the occurrence of any of the events described in subparagraphs <u>(A)-(R)</u> of this <u>Section 3.1</u> constitutes good cause for the termination or non-renewal of this Agreement and also will entitle Australian Gold to the remedies set forth in <u>Section 5.5</u> below. All sums due and amounts owed to Australian Gold shall be paid by Distributor within ten (10) days after Australian Gold notifies Distributor that this Agreement will terminate.

3.2.    <u>SUSPENSION OF AGREEMENT</u>. Australian Gold shall have the right to suspend this Agreement and to deny Distributor the opportunity to purchase Products from Australian Gold and to delay the delivery of Products purchased by Distributor, if, and for as long as, in its sole discretion, Australian Gold has reason to believe that an investigation is necessary to determine if any of the events described in <u>Section 3.1(A)-3.1(R)</u> have occurred. If Australian Gold reinstates this Agreement after a suspension, Distributor acknowledges and agrees that Distributor's rights and remedies with respect to Australian Gold's suspension of the Agreement are limited to reinstatement, and Australian Gold shall not be liable in any manner or amount to Distributor for any losses, expenses or other such costs incurred during the suspension.

3.3.    <u>AUSTRALIAN GOLD'S REMEDIES</u>.

(A)     Australian Gold may, but is not obligated to under any circumstance, require Distributor to sell all Products to Australian Gold upon suspension, expiration or

- 12 -

earlier termination of this Agreement. Distributor acknowledges and agrees that the aggregate purchase price to be paid by Australian Gold shall be equal to (a) the purchase price paid by the Distributor to Australian Gold for such Products less (b) all expenses associated with such repurchase including shipping, handling, packaging, storage and reasonable legal fees less (c) any costs described in Section 3.3(B) below. If Australian Gold chooses not to repurchase Distributor's Products pursuant to this Agreement, Distributor shall sell the remainder of such Products only pursuant to the terms of this Agreement.

(B)    Distributor acknowledges and agrees that Australian Gold has a substantial interest in protecting the goodwill associated with the Intellectual Property and Products by any means of enforcement Australian Gold deems appropriate and necessary. To that end, Australian Gold shall have the right to require Distributor to reimburse Australian Gold for all costs (including, but not limited to, investigative, legal or other professional fees, travel, lodging and court costs, and any damages claimed by Australian Gold or any judgment against a third party for which Australian Gold has not recovered) associated in any way with:

   (i)    Australian Gold's acquisition of Products that Distributor sold in violation of any provision of this Agreement;

   (ii)   Australian Gold's investigation of any alleged violation of this Agreement by Distributor;

   (iii)  Australian Gold's litigation or resolution of any alleged violation of this Agreement by Distributor; or

   (iv)   Actions taken by Australian Gold to prevent violations of this Agreement by Distributor.

### ARTICLE IV.
### WARRANTIES AND DAMAGES

4.1.   WARRANTY OF TITLE. Australian Gold hereby warrants to Distributor that title to all Products purchased by Distributor under this Agreement shall be free and clear of all liens, security interests and any other claims by third persons.

4.2.   LACK OF WARRANTY OF PRODUCTS. Other than the warranty set forth in Section 4.1 above, Australian Gold gives no warranty with regard to the Products. Australian Gold hereby disclaims and excludes all other warranties -- whether express, implied, or statutory -- including any WARRANTY OF MERCHANTABILITY, WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, and any implied warranties otherwise arising from course of dealing or usage of trade to the fullest extent allowed under applicable law.

4.3.   LIMITATION OF LIABILITY. Distributor acknowledges and agrees that its sole and exclusive remedy for any breach by Australian Gold of any of its obligations hereunder shall be to obtain a refund of any purchase price paid to Australian Gold for any Products

- 13 -

to which such breach relates. **In no event shall Australian Gold be liable, directly or vicariously, for any damages, including incidental, special, indirect, consequential or punitive damages, whether resulting from non-delivery or from the use, misuse or inability to use the Products, or from defects in the Products, or from Australian Gold's own negligence or other tort or from lost profits, goodwill, or any other potential claims related to the termination or non-renewal of this Agreement.** The above provisions apply regardless of whether damages are sought for breach of warranty, breach of contract, negligence or strict liability in tort or under any other direct or derivative legal theory.

4.4.   BINDING AGREEMENT.  Each party warrants it is duly organized, validly existing and in good standing under the laws of applicable jurisdiction, and has taken all necessary corporate action to adopt, approve and ratify this Agreement.  Upon the execution hereof, this Agreement will constitute a valid and legally binding obligation enforceable in accordance with its terms.  The terms and conditions of this Agreement shall be binding upon the parties hereto and Distributor's (i) parent, (ii) subsidiaries, (iii) affiliates, (iv) owners, (v) officers, (vi) directors, (vii) partners, (viii) members, (ix) employees, (x) family members of any owner, officer, director, partner, member or employee and (xi) any other related entities or individuals (collectively, "Affiliates").  Distributor shall be responsible for any actions of Affiliates with respect to this Agreement.  For example, Distributor shall be in breach of this Agreement for any act committed by Distributor's Affiliate if such act would constitute a breach of this Agreement if the act were committed by Distributor.

## ARTICLE V.
## PROVISIONS OF GENERAL APPLICABILITY

5.1.   RELATIONSHIP OF THE PARTIES.  Nothing contained herein shall be construed to place the parties in the relationship of partners, joint venturers, franchisor and franchisee, or principal and agent.   Neither party is authorized to assume or undertake any obligations of any kind, express or implied, on behalf of the other party, except as expressly provided herein.

5.2.   AMENDMENT.  This Agreement shall not be amended, modified or altered except by written instrument duly executed by both parties hereto; provided that an amendment by Australian Gold to Exhibit A, Exhibit B, Exhibit C and/or the Internet Policy described herein shall operate as an amendment to this Agreement without Distributor's acknowledgment or consent.

5.3.   INSPECTION BY AUSTRALIAN GOLD.  Australian Gold shall have the right at any time to inspect and review the books and records of the Distributor, including policies and procedures, accounting records, invoices, purchase orders, shipping records, customer lists, contracts, advertising material, computer data and files, etc., which in the sole discretion of Australian Gold are reasonably related to the performance of this Agreement, the Products, or Distributor's Customers.  Distributor shall allow Australian Gold and its designated agents reasonable access to conduct such an inspection within three (3) business days of any request by Australian Gold.  Upon request of Australian

AG/CG/SB Distrib Agmt -- Domestic -- Non-Exclusive -- Multi Year (2006-2009)
I/1698188.5

Gold, the Distributor shall designate Australian Gold to be its representative to inspect and review the books and records of any Subdistributors.

5.4.   NOTICES.  Any notice, instrument, or other communication required or permitted to be given by one of the parties under this Agreement shall be reduced to writing in English and shall be considered as properly given and received (i) upon the date of delivery if delivered personally, (ii) upon receipt of confirmation back of a facsimile delivery, provided, on the day of transmission, a copy is deposited with a reputable overnight courier that issues a receipt or other confirmation of delivery service specifying next-day delivery, or (iii) three (3) business days after the date mailed by mail, registered or certified, with return receipt requested, postage prepaid in all applicable cases, addressed as set forth on page S-1 of this Agreement.  If Distributor refuses to accept notice by any method stated herein or if Australian Gold is unable to effect delivery by any such method, Australian Gold may send notice by electronic mail to Distributor's last known electronic mail address, and such notice will be deemed effective when sent.  Either party may change its address and/or the person to receive notice for purposes of this Section 5.4 by giving the other party written notice of the new address and/or person to receive notice in the manner set forth above.  Notwithstanding the terms of this paragraph, any notice given by Australian Gold to Distributor regarding a change or amendment to the Internet Policy and/or Exhibit A, Exhibit B or Exhibit C shall be effective immediately upon receipt of any such notice by the Distributor.

5.5.   REMEDIES.  Australian Gold may pursue any legal or equitable remedy, all of which shall be deemed cumulative.  Any violation or threatened violation of this Agreement by Distributor will cause Australian Gold to suffer irreparable harm for which there will be no adequate remedy at law.  Therefore, whether or not Australian Gold terminates the Agreement pursuant to Section 3.1, and without limiting Australian Gold's rights under Section 3.1, if Distributor threatens to violate or violates any provision of this Agreement, Australian Gold shall be entitled to immediate injunctive relief, including a temporary restraining order, without notice, and without the posting of any bond.  Australian Gold's right to injunctive relief shall be in addition to, and not in lieu of, any other legal or equitable remedies that may be available to Australian Gold, including monetary damages to the extent they are calculable.  Australian Gold shall also be entitled to recover from Distributor all costs, fees (including any expert witness or legal fees) and expenses incurred by Australian Gold in any action to enforce this Agreement or to recover for any actual or threatened breach of this Agreement or in defending any action brought by Distributor to challenge or construe the terms of the Agreement.  Australian Gold shall also be entitled to recover prejudgment interest on all amounts recovered in the amount of ten percent (10%) per annum.

5.6.   RIGHT OF SETOFF.  The Distributor hereby grants to Australian Gold, as security for the full and punctual payment and performance of any and all obligations of the Distributor to Australian Gold, a continuing lien on, and security interest in, all sums at any time or times credited by or due from Australian Gold to the Distributor; and, regardless of the adequacy of any collateral or security or other means of obtaining payment or performance of such obligations, Australian Gold may, without demand or notice, apply or set off the whole or any portion of such sums, at any time or times,

- 15 -

against amounts payable to the Distributor under this Agreement, under any rebate plan or rebate program as Australian Gold may establish at any time, or under any other agreement or transaction between Australian Gold and the Distributor. Australian Gold's right of setoff as agreed to herein may be exercised by Australian Gold at any time during the Term of this Agreement or after its termination for any reason. This setoff right is in addition to and not in derogation of any common law rights of setoff or recoupment to which Australian Gold may also be entitled.

5.7.   GOVERNING LAW; JURISDICTION.   This Agreement and all transactions contemplated hereby shall be construed, governed and enforced in accordance with the laws of the State of Indiana and shall be treated in all respects as a State of Indiana contract without regard to laws related to choice or conflict of laws.   The parties acknowledge and agree that this Agreement was negotiated and executed in the State of Indiana. The parties hereto irrevocably consent to the jurisdiction and exclusive venue of the courts of Marion County in the State of Indiana and/or the United States District Court for the Southern District of Indiana with respect to any and all actions in any way related to this Agreement or its enforcement, and the parties to this Agreement irrevocably waive any and all objections thereto.   Australian Gold shall, in its sole discretion, have the right to litigate any action relating to this Agreement in the venue where the breach occurred or where any defendant may be found.

5.8.   SUCCESSORS AND ASSIGNS.   The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the successors and assigns of Australian Gold, Distributor and any affiliates of Australian Gold or Distributor.   Australian Gold shall have the right to assign this Agreement without the consent of Distributor and without notifying Distributor of any such assignment.   No part of this Agreement shall be assigned or delegated by Distributor to any person or entity without the prior express written consent of Australian Gold.

5.9.   NON-WAIVER.   No act, omission, failure or delay by either party in exercising any right, power or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise of any right, power or privilege hereunder.

5.10.   SEVERABILITY.   If a court of competent jurisdiction makes a final determination that any provision of this Agreement (or any portion thereof) is invalid, illegal or unenforceable for any reason whatsoever, and all rights to appeal the determination have been exhausted or the period of time during which any appeal of the determination may be perfected has expired, the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby, and to the fullest extent possible, the provisions of this Agreement shall be construed so as to give effect to the intent manifested by the provision held invalid, illegal or unenforceable.

5.11.   HEADINGS.   The headings and subheadings herein are for convenience only, and shall not affect the construction or interpretation of any of their provisions.   As used herein, the term "person" refers both to individuals as well as entities.

- 16 -

5.12.   FORCE MAJEURE.   Australian Gold will not be liable to Distributor under this Agreement if delayed or prevented from performance by causes beyond its control, including, fires, floods, strikes, labor disputes, terrorist acts, civil strife, delays in transportation, shortages of labor or materials, Acts of God, war, insurrection or governmental actions or restrictions, whether such causes occur at Australian Gold or at an affiliate or supplier of Australian Gold. The existence of such causes of delay shall justify the suspension of manufacture and/or delivery and shall extend the time of performance on the part of Australian Gold to such extent as may be necessary to enable it to make delivery in the exercise of reasonable diligence after the causes of delay have been removed.

5.13.   INCORPORATION BY REFERENCE.   All schedules, exhibits and other documents which are attached hereto and referred to in this Agreement are incorporated herein and made a part hereof by reference.

5.14.   PURCHASE ORDERS.   The terms of this Agreement govern any Products sold to Distributor pursuant to a purchase order issued by Distributor and accepted by Australian Gold. The terms of this Agreement will govern if the terms of any purchase order are inconsistent with the terms of this Agreement. Australian Gold reserves the right to reject any purchase order, in whole or in part, with or without cause or to delay the delivery of any Products included in any purchase order for any reason or for no reason.

5.15.   ENTIRE AGREEMENT.   This Agreement contains the entire agreement of the parties hereto with respect to the subject matter hereof and shall be deemed to supersede all prior and contemporaneous agreements, representations, and understandings, whether written or oral, concerning the subject matter of this Agreement. If Distributor has entered into, or enters into during the Term of this Agreement, a distributorship agreement with respect to tanning equipment or other products, this Agreement and that agreement shall not supersede or conflict with each other; however, if such Distributor breaches this or any other agreement with Australian Gold (such breach to be in Australian Gold's sole determination), then the Distributor acknowledges and agrees that such breach shall constitute a breach of all agreements with Australian Gold, and Australian Gold shall have the right to terminate each and all agreements or to exercise any and all rights and remedies otherwise available to Australian Gold as a result of such breach.

5.16.   CONFIDENTIALITY.   Except as permitted by this Agreement, Distributor warrants and covenants that it shall not disclose to any third party or, directly or indirectly, use, disseminate or disclose for its benefit any proprietary or confidential information concerning the Products disclosed to or acquired by Distributor, including information related to the formulation, ingredients or manufacturing of the Products. Distributor agrees that all information described by the preceding sentence shall be, become and remain the exclusive property of Australian Gold.

5.17.   CHANGE OF CONTROL.   If any person or entity not a substantial owner of Distributor as of the effective date of this Agreement becomes a substantial owner of Distributor, Distributor shall notify Australian Gold at least thirty (30) days prior to the event resulting in the new substantial owner. For purposes of this paragraph, ownership of

- 17 -

twenty-five percent (25%) of Distributor's equity shall be deemed substantial.  If any person or entity not a substantial owner of Subdistributor as of the effective date of this Agreement becomes a substantial owner of Subdistributor, Distributor shall notify Australian Gold at least thirty (30) days prior to the event resulting in the new substantial owner.  For purposes of this paragraph, ownership of twenty-five percent (25%) of Subdistributor's equity shall be deemed substantial.  In addition, Distributor shall notify Australian Gold at least thirty (30) days prior to any event which results in the acquisition by Distributor and/or Subdistributor of any interests in a company or entity which manufactures products that are competitive with, substitutes for or similar to the Products.

5.18.   <u>COMPLIANCE WITH LAWS</u>.  Distributor, at its expense, shall obtain all permits and licenses which may be required under any applicable federal, state or local law, ordinance, rule or regulation related in any manner to this Agreement.  Distributor shall, in the conduct of its business and in the performance of this Agreement, comply fully with all applicable federal, state and local laws, ordinances, rules and regulations.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

AG/CG/SB Distrib Agmt – Domestic – Non-Exclusive – Multi Year (2006-2009)
I/1698188.5

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed in their respective names on the date first above written.

| | |
|---|---|
| "AUSTRALIAN GOLD" | ADDRESS OF AUSTRALIAN GOLD FOR PURPOSES OF NOTICE: |
| AUSTRALIAN GOLD, LLC | |
| By: _John Keiffner_ | 6270 Corporate Drive<br>Indianapolis, Indiana  46278-2900 U.S.A.<br>Attention: John Keiffner<br>Facsimile: 317-554-3449 |
| Printed: JOHN KEIFFNER | |
| Title: VP Sales ; Mkt | |

| | |
|---|---|
| "COMPANY" | ADDRESS OF DISTRIBUTOR FOR PURPOSES OF NOTICE (REQUIRED): |
| American Sun Systems, Inc. | 705 Sunshine Way<br>Greensboro, N.C. 27409 |
| By: _Rodney C. Stroud_ | |
| Printed: Rodney C. Stroud | Facsimile: 336-885-0904 |
| Title: President | E-Mail: C.Stroud @ AmericanSunSystems.com |

| | |
|---|---|
| "OWNERS" | ADDRESS OF OWNERS FOR PURPOSES OF NOTICE (REQUIRED): |
| Signed: n/a | |
| Printed: _____ | _____ |
| | _____ |
| Signed: _____ | _____ |
| | Facsimile: _____ |
| Printed: _____ | E-Mail: _____ |

S-1

## EXHIBIT A

### LIST OF PRODUCTS

### DISTRIBUTOR PRICE LIST

### EFFECTIVE DATE: NOVEMBER 1, 2006

AG/CG/SB Distrib Agmt – Domestic – Non-Exclusive – Multi Year (2006-2009)
I/1698188.5

## EXHIBIT B

### SUGGESTED PRICING POLICY

### EFFECTIVE DATE: NOVEMBER 1, 2006

1.  In accordance with Section 1.7 of this Agreement, the suggested resale price for Australian Gold Products, by annual volume of Distributor's Customer's purchases of Australian Gold Products, is as follows:

| | | |
|---|---|---|
| Less than $2,500 per year | Australian Gold/Caribbean Gold | 20% off wholesale price |
| | Swedish Beauty | 15% off wholesale price |
| $2,500 to $4,999 per year | Australian Gold/Caribbean Gold | 25% off wholesale price |
| | Swedish Beauty | 20% off wholesale price |
| $5,000 to $9,999 per year | Australian Gold/Caribbean Gold | 30% off wholesale price |
| | Swedish Beauty | 25% off wholesale price |
| $10,000 to $19,999 per year | Australian Gold/Caribbean Gold | 35% off wholesale price |
| | Swedish Beauty | 30% off wholesale price |
| $20,000 or greater per year | Australian Gold/Caribbean Gold | 40% off wholesale price |
| | Swedish Beauty | 35% off wholesale price |

2.  The above suggested prices are inclusive of all promotional giveaways of Australian Gold tanning lotions (including Australian Gold, Caribbean Gold, Swedish Beauty and any lotions that may be introduced in the future), rebates and other incentive marketing programs that would reduce the net value received in exchange for any Australian Gold product.

3.  Australian Gold has reserved the right to terminate Distributors who do not comply with the suggested resale price or who sell to Subdistributors who do not comply with the suggested resale price.

    Australian Gold has adopted this Suggested Pricing Policy unilaterally and independently. Australian Gold has not required any Distributor to agree to this Policy and has not asked for assurance that any Distributor will adhere to this Policy. This Suggested Pricing Policy supersedes all previously announced pricing policies.

B-1

## EXHIBIT C

### ADVERTISEMENT REBATE POLICY

### EFFECTIVE DATE:  NOVEMBER 1, 2006

1.   For purposes of this policy, "Advertisement(s)" means all advertisements in print, including any advertisement in distribution catalogs, direct mail flyers, direct mail cards, magazines, trade publications and newspapers.

2.   Australian Gold shall reimburse Distributor for the cost to Distributor of all Advertisements placed by Distributor that comply with this policy up to a maximum reimbursement based upon a percentage of Distributor's volume level of sales per year.

3.   Australian Gold shall not reimburse Distributor for the cost of all Advertisements placed by Distributor if any Advertisement does not meet the following guidelines:

   A.   Except as provided in Section B below:

      (i)   Australian Gold/Caribbean Gold lotion products shall not be advertised at more than 20% off wholesale.

      (ii)   Swedish Beauty lotion products shall not be advertised at more than 15% off wholesale.

      (iii)   Australian Gold tanning lamp products shall not be advertised at more than 25% off wholesale.

   B.   In distribution catalogs, Australian Gold/Caribbean Gold lotion products, Swedish Beauty lotion products and Australian Gold tanning lamp products shall not be advertised at less than wholesale.  No other form of Advertisement shall be attached to, affixed to, bound in or mailed with distribution catalogs.

   C.   Advertisements shall not include mention of rebate programs, incentive programs, bonus points or any further method of discount beyond the discounts stated above.

   D.   Advertisements shall not offer an Australian Gold product with the product of any other manufacturer in a bundled unit.

   E.   All Advertisements for any Australian Gold product for less than wholesale ("Sale Ads") shall identify a beginning date and ending date, such ending date being not more than fourteen (14) days from the beginning date.

4.   To be eligible for reimbursement, Distributor must remain an Australian Gold distributor for the full sales year.

5.   Reimbursements shall be paid to Distributor sixty (60) days after Australian Gold receives (i) proof of all qualified Advertisements and (ii) proof that all Advertisements

AG/CG/SB Distrib Agmt – Domestic – Non-Exclusive – Multi Year (2006-2009)
I/1698188.5

placed by Distributor have complied with this Advertisement Rebate Policy. Distributor's compliance with this Advertisement Rebate Policy shall be determined in the sole discretion of Australian Gold.

This Advertisement Rebate Policy supersedes all previously announced advertisement policies.

AG/CG/SB Distrib Agmt – Domestic – Non-Exclusive – Multi Year (2006-2009)
I/1698188.5

FROM :American Sun Systems          FAX NO. :3368050904          Mar. 15 2006 12:36PM P1

*American Sun Systems*

Australian Gold ®

Attn: Cryn

# Gold Chairman Offer

## Coop Advertising – Distributor Catalog 2007
### 3 -Year Distributor Contract for
### 3-Year Position in Catalog

### Catalog Position Requirement:

Australian Gold, Swedish Beauty, and
Caribbean Gold (any order) – 1st Lotion positions in catalog
Minimum 10 Consecutive pages

| Level | Rebate |
|---|---|
| Gold Chairman | 4% |

If you elect not to accept this offer, you will receive 2% advertising/catalog positioning.
One percent of previous rebate has been transferred to Distributor Volume, which
increases to 6% from 5%.

Please sign below to accept program.

**Distributor**

Sign: _Chip Strong_

Print Name: _Chip Strong_

Date: _3|15|06_

**AG**

Sign: _Tracy L. Ring_

Print Name: _Tracy L. Ring_

Date: _3/17/06_

FROM :Amer can Sun Systems        FAX NO. :3368850904           Nov. 01 2007 12:55PM P2/3

10/30/:007  14:33      8777770890

PAGE  04/05

## ADDENDUM TO EXCLUSIVE DISTRIBUTORSHIP AGREEMENT

This Addendum ("Addendum") is made and entered into this _3/1st_ day of _Oct_____, 2007, and effective as of the 1st day of November, 2007, by and among Australian Gold, LLC, an Indiana limited liability company, ("Australian Gold") and _American Sun Systems, Inc._____, a partnership/corporation/LLC
[insert name of Distributor]                                        [circle one]
organized under the laws of the State of _N.C._

("Company") and _Rodney Stamp_
[insert name of Owners]
an individual/partnership/corporation/LLC residing or organized under the laws of the State of
[circle one]
_N.C._____; ("Owners", collectively with Company, "Distributor").
[insert state of residency or organization/incorporation]

### RECITALS

WHEREAS, Australian Gold, Distributor and Owner are parties to a Distributorship Agreement, dated _____ (the "Agreement"); and

WHEREAS, each of AG, Distributor and Owner has determined that it is in his or its respective best interest to enter into this Addendum, whereby the Agreement will be modified as provided herein.

NOW THEREFORE, in consideration of the mutual promises, covenants and conditions set forth herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1. The first sentence of Section 2.1 is hereby deleted in its entirety and replaced with the following sentence. Subject to the terms and conditions hereof, Australian Gold hereby grants to Distributor, and Distributor accepts, a non-exclusive, limited, revocable, non-transferable license to use the trademarks ("Marks"), patents ("Patents") and copyrights ("Copyrights") under which the Products are sold ("Intellectual Property") in connection with the promotion, marketing and sale of the Products within the United States subject to the terms and conditions of this Agreement.

2. Australian Gold shall have the right, at its discretion, to permit Distributor to market, sell, and distribute tanning products manufactured by its sister companies, Cal Tan, LLC and Designer Skin, LLC. If Australian Gold elects to permit Distributor to market, distribute and sell Cal Tan, LLC or Designer Skin LLC products, such products shall be listed on Exhibit A, such products shall be included within the definition of Products, and the rights and obligations of Distributor with respect to such products shall be governed by this Agreement.

3. Except as modified herein, each of the parties acknowledges and agrees that the Agreement shall remain in full force and effect in accordance with its terms.

I.2026084.4

4.    This Addendum and all transactions contemplated hereby shall be construed, governed and enforced in accordance with the laws of the State of Indiana and shall be treated in all respects as a State of Indiana contract without regard to laws related to choice or conflict of laws. The parties hereto irrevocably consent to the jurisdiction of the courts of the State of Indiana and the United States District Court for the Southern District of Indiana with respect to any and all actions related to this Addendum or its enforcement and the parties to this Addendum irrevocably waive any and all objections thereto.

IN WITNESS WHEREOF, the parties have caused this Addendum to be duly executed in their respective names on the date first above written.

"Australian Gold"                        "DISTRIBUTOR"
AUSTRALIAN GOLD, LLC                      American Sun Systems

By: _____                      By: _____

Printed: _____                 Printed: Rodney C. Straus

Title: _____                   Title: President

                                         "OWNER"

                                         _____

-2-

1/2 726684.4